CORNELL STEAMBOAT COMPANY
v.
UNITED STATES of America.

CORNELL STEAMBOAT COMPANY
and THE Tug CORNELL NO. 20
v.
UNITED STATES of America.

United States District Court
S. D. New York.
Feb. 15, 1956.

Kirlin, Campbell & Keating, New York City, for Cornell Steamboat Co. Edwin S. Murphy, Paul F. McGuire, New York City, of counsel.

Paul W. Williams, U. S. Atty., Louis E. Greco, Atty., Department of Justice, New York City, for the United States.

DIMOCK, District Judge.

Cornell Steamboat Company sues the United States for damage to its tug Cornell No. 20 arising from collision with the unmarked wreck Colonel Smith near the Albany Day Line Pier at King-ston, New York. Two actions are brought. One, containing a single claim, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., and another, containing two claims, one under the Suits in Admiralty Act, 46 U.S.C. § 741 et seq., and the other under the Public Vessels Act, 46 U.S.C. § 781 et seq.

██ At the close of the trial I held that the tug had been negligent in failing to proceed with due caution in an area where those in charge of her knew that the wreck was located. I also held that the government had been negligent in that the Coast Guard Cutter Mariposa, which had had the wreck in tow, left it unmarked in navigable waters of the . United States. I stated that I would not direct a decree against the United States under the Suits in Admiralty Act because no merchant ship of the United States was involved but would direct a decree under the Public Vessels Act on the ground of the Mariposa's negligence. I adhere to those statements.

I also stated, however, that I would not direct judgment under the Federal Tort Claims Act. In that I was wrong.

The theory of the claim under the Federal Tort Claims Act was that there had been a breach of statutory duty to mark the wreck. This statutory duty was said to be that imposed by title 33 U.S.C. § 736, 50 Stat. 666, § 4676, as it existed at the time of the accident. That section then read in part:

"Sec. 4676. Whenever the owner of any sunken vessel, boat, watercraft, raft, or other similar obstruction existing on any river, lake, harbor, sound, bay, or canal or other navigable waters of the United States has failed to mark, or in the judgment of the Commissioner of Lighthouses has failed suitably to mark, the same in accordance with the provisions of section 15 of the Act of March 3, 1899 (ch. 425, 30 Stat. 1152), the Commissioner of Lighthouses is authorized to suitably mark the same for the protection

of navigation. Until such time as abandonment of any such obstruction has been established in accordance with the provisions of section 19 of the Act of March 3, 1899 (ch. 425, 30 Stat. 1154), the owner thereof shall pay to the Commissioner of Lighthouses the cost of such marking. As soon as abandonment of any such obstruction has been so established, it shall be the duty of the Secretary of War to keep the same so marked pending removal thereof in accordance with the provisions of section 19 of the Act of March 3, 1899 (ch. 425, 30 Stat. 1154), but the Commissioner of Lighthouses may at the request of the Department of War continue the suitable marking of any such obstruction for and on behalf of that Department."

The critical words are "it shall be the duty of the Secretary of War to keep the same so marked". I could not then bring myself to believe that Congress had placed upon the government a mandatory duty to keep suitably marked every thirty day old wreck in navigable waters of the United States. I therefore construed the provision as referring only to wrecks of vessels of which the United States had been owner, distinguishing on that ground Somerset Food Co. v. United States, 4 Cir., 193 F.2d 631, where the Federal Tort Claims Act was applied, and where the offending wreck had been a United States naval vessel. I have since come to the conclusion that there is no basis in the language of the statute or of the Somerset opinion for any such discrimination. In the Somerset case Circuit Judge Dobie said at page 634:

"The initial duty of removing or marking a wrecked ship rests upon the owner until abandonment of the ship. After abandonment, this duty clearly rests on the United States under the Wreck Acts, 33 U.S.C.A. §§ 409, 736, 14 U.S.C.A. § 86, in substitution for the initial activity required of the individual owner. Here, the United States was the original owner of The San Marcos, before its abandonment."

and at page 635:

"We think, too, that the Wreck Acts effectively dispose of the contention that the United States is relieved of liability here because, under § 2680(a) of the [Federal Tort Claims] Act, the Government is not liable for the breach of a discretionary duty and that the Government's duty here to remove or mark the wreck was discretionary. As we read the Wreck Acts, the duty of the United States to mark or remove the wreck is mandatory. The appropriate federal agencies and officers decide merely the proper methods or measures."

I can see no reason for taking the statement that the government's duty to mark a wreck is mandatory at less than its face value and I agree that the duty is mandatory.

There was, therefore, under title 33 U.S.C. § 736, quoted in part above, a mandatory duty imposed on the government to mark the wreck of the Colonel Smith when it had been legally abandoned. Section 19 of the Act of March 3, 1899, 33 U.S.C. § 414, provides in substance that any such "obstruction" shall be deemed to have been abandoned after it has existed for thirty days. Thus a mandatory statutory duty on the part of the government to mark the wreck arose, at the very latest, at the expiration of thirty days after its deposit at the Day Line dock.

The question remains whether a right of action arises under the Federal Tort Claims Act to recover damages caused by a breach of that duty.

Numerous cases interpreting the Suits in Admiralty Act and the Public Vessels Act have held that the possession of an admiralty remedy excludes use of all other remedies. I have already held that Cornell has an admiralty remedy for the injury to its tug under the Public Vessels Act, 46 U.S.C. § 781 et seq. The government contends that the

existence of this remedy precludes recovery by Cornell under the Federal Tort Claims Act.

The right of action under the Public Vessels Act arises by virtue of the fact that those in charge of the Mariposa, a vessel of the United States, negligently placed the wreck in navigable waters without a mark. There can be no doubt that, if this were the sole ground on which recovery were claimed, the admiralty remedy would be exclusive. However, the claim under the Federal Tort Claims Act for the same recovery is maintained pursuant to an entirely different theory of liability. This claim arises by virtue of the failure of the government, through the Army Engineers, to carry out a mandatory duty to mark every wreck situated as was the wreck of the Colonel Smith. Such a claim is not cognizable in admiralty and therefore could not have been brought under the Public Vessels Act or the Suits in Admiralty Act.

The rule of the cases above referred to that, where a remedy against the United States is provided by the Public Vessels Act or the Suits in Admiralty Act, it shall be exclusive of all other remedies was first enunciated by the Supreme Court in Johnson v. United States Shipping Board Emergency Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451.[1] The Court of Appeals of this Circuit recently reiterated the rule in Pru-

dential Steamship Corp. v. United States, 2 Cir., 220 F.2d 655.

In Johnson, the Supreme Court stated that the admiralty remedy was exclusive in "causes of action arising out of the possession and operation of * * * vessels." 280 U.S. at page 326, 50 S.Ct. at page 120. Again, 280 U.S. at page 327, 50 S.Ct. at page 120, the Court concluded that "the remedies given by the act are exclusive in all cases where a libel might be filed under it." In this case, the cause of action under the Federal Tort Claims Act arises out of the failure of the Engineers to mark the wreck. It does not arise from "possession and operation of * * * vessels." Nor could a libel have been filed against the Engineers. Thus the rule of the Johnson case does not prohibit the maintenance of plaintiff's claim under the Federal Tort Claims Act.[2]

Besides this decisional law that admiralty remedies were exclusive, the Federal Tort Claims Act, when it was passed in 1946, contained a declaration, 28 U.S.C. § 2680(d), 60 Stat. 845, that its provisions should not apply to "Any claim for which a remedy is provided by sections 741–752 [Suits in Admiralty Act], 781–790 [Public Vessels Act] of Title 46, relating to claims or suits in admiralty against the United States."

This legislative declaration does not seem to me to affect plaintiff's right to pursue its remedy under the Federal

---

1. The Johnson case involved only the Suits in Admiralty Act. However, the Public Vessels Act, 46 U.S.C. § 782, states that all proceedings under the Public Vessels Act shall be subject to the provisions of the Suits in Admiralty Act. Therefore, a holding that the Suits in Admiralty Act provides an exclusive remedy would apply similarly to the remedy provided by the Public Vessels Act.

2. The result is not changed by the 1950 amendment to the Suits in Admiralty Act, 46 U.S.C. § 745, which added the words:

"*Provided*, That where a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the

United States or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim."

It would seem that this amendment was meant to apply only where a party other than the United States, named as such, was being sued. But even assuming its applicability to this case, it would not alter the result. The Senate report on this amendment stated that its purpose was to declare the rule announced by the Supreme Court in Johnson v. United States Shipping Board, Emergency Fleet Corp., Sen.Rep.No.2535, 81st Cong., 2d Sess. 2. See also 96 Cong. Rec. 16115. I hold above that the rule of the Johnson case does not prohibit the maintenance of plaintiff's claim under the Federal Tort Claims Act.

Tort Claims Act any more than the decisional law did. The legislative declaration excludes from the benefits of the Federal Tort Claims Act "Any claim for which a remedy is provided" under the admiralty acts. I have held that a remedy is provided for the injury under the admiralty acts because of the misfeasance of those in charge of the ship which undertook to deal with the wreck. Though plaintiff seeks a remedy for the same injury under the Tort Claims Act, plaintiff's claim is different and arises from a different state of facts, namely that the Army Engineers omitted to perform a statutory duty. I do not believe that, in adopting the exclusion clause in the Federal Tort Claims Act, Congress intended that the United States should be allowed thereby to say to plaintiff "You are precluded from recovery under the Federal Tort Claims Act on your claim for non-feasance by the circumstance that the facts show, in addition, misfeasance for which a remedy is provided by the Suits in Admiralty Act."

The result of all the foregoing is that there are two grounds for holding the United States liable for a single injury. That is a common enough state of affairs when both grounds are stated in a single action. Here, however, under our procedure, one ground must be stated in an action at law and the other in a suit in admiralty.

I would have preferred to have joined both grounds of recovery in one judgment. There seems little sense in requiring two different pieces of paper, one a decree in admiralty and the other a judgment at law, when only one recovery is granted, albeit on two grounds. However, we have not yet joined admiralty and law in the same manner that equity and law have been joined. See Rule 1 of the Rules of Civil Procedure, 28 U.S. C. Also see Rule 81(a) (1) which specifically excludes application of the Rules of Civil Procedure to proceedings in admiralty. While Skupski v. Western Nav. Corp., D.C.S.D.N.Y., 113 F.Supp. 726, permitted joinder of an admiralty claim with a law claim, there seems to be overwhelming authority against such consolidation. See, e. g., Kaufman v. John Block & Co., Inc., D.C.S.D.N.Y., 60 F.Supp. 992; McDonald v. Cape Cod Trawling Corp., D.C.D.Mass., 71 F.Supp. 888; United Transportation & Lighterage Co. v. New York & Baltimore T. Line, 2 Cir., 185 F. 386; Panama R. R. Co. v. Johnson, 264 U.S. 375, 386, 44 S. Ct. 391, 68 L.Ed. 748.

It is true that an admiralty claim is often joined with a law claim in those cases where a claim for maintenance and cure and a claim under the Jones Act, 46 U.S.C. § 688, are jointly presented. Some courts refuse even this joinder on the ground that a law court can have no jurisdiction over an admiralty cause of action. Jordine v. Walling, 3 Cir., 185 F.2d 662. Those courts which permit this joinder do so only on the theory that, by acquiring jurisdiction over the Jones Act action, the court also acquires a sort of pendent jurisdiction over the maintenance and cure claim since the proof of the Jones Act claim will be the proof of the maintenance and cure claim as well. In that way, a second trial on the same evidence can be avoided. See, e. g., Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 172 F.2d 601, 604. See also Lindquist v. Dilkes, 3 Cir., 127 F.2d 21, 25, overruled in Jordine v. Walling, supra. The courts have not, however, gone so far as to indicate that either the Federal Tort Claims Act claim or the Public Vessels Act claim could be regarded as pendent upon the other. Thus, even assuming that maintenance and cure and Jones Act claims may be validly joined in one action, I do not feel that that would constitute authority for the entry of a single judgment in this action.

To meet this state of affairs, I direct that recovery under the admiralty decree be made conditional on reversal, vacating, setting aside or annulment of the judgment under the Federal Tort Claims Act and said judgment being unpaid. Precedent for a conditional decree in admiralty is furnished by the charter party and bill of lading cases where two

parties are held liable, one primarily and the other secondarily. In such a case, the admiralty court issues a decree under which the successful party is required to have the decree returned unsatisfied against the party primarily liable before he may resort to the party secondarily liable. 3 Benedict, Admiralty § 417c (6th ed., 1940). This practice has been used in this circuit. United States v. Carroll Towing Co., 2 Cir., 159 F.2d 169, 174; The Sagamore, D.C.E.D.N.Y., 3 F.2d 689.